**FILED & ENTERED**

**JUN 08 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Ronnie David Yona and Caroline Yona, Debtor | Case No.:    2:16-bk-17549-ER<br>Adv. No.:    2:17-ap-01221-ER |
| Bank of America, N.A.,<br><br>                                        Plaintiff<br><br>v.<br><br>Bruce Torkan et al.,<br><br>                                        Defendants | **MEMORANDUM OF DECISION (1) MAKING FINDINGS AS TO THE ONLY ISSUES OVER WHICH THE COURT HAS JURISDICTION AND (2) REMANDING ACTION TO THE LOS ANGELES SUPERIOR COURT**<br><br>Date:        June 6, 2017<br>Time:       10:00 a.m.<br>Location:   Ctrm. 1568<br>                  Roybal Federal Building<br>                  255 East Temple Street<br>                  Los Angeles, CA 90012 |

   The Court conducted a hearing on the Motion to Remand filed by Azriel, LLC at the above-captioned date and time. The Court took the matter under submission at the conclusion of the hearing. For the reasons set forth below, the Court has jurisdiction to determine that (1) the Postpetition Settlement Agreement[1] did not extinguish the Dayco Liens, (2) the Debtor's discharge did not extinguish the Dayco Liens, (3) the Postpetition Settlement Agreement was a settlement and release of any claims that Azriel could assert to attack the validity of the Dayco Liens; and (4) the Postpetition Settlement Agreement does not bar Azriel from attempting to

---

[1] Terms not defined in this introductory paragraph are defined below.

enforce the State Court Judgment against Yona Inc. or First Merchant. The Court has no jurisdiction over any of the other issues set forth in the State Court Action. Having disposed of the only issues over which it has jurisdiction, the Court must remand the action.[2]

## I. Facts and Summary of Pleadings
### A. The Prepetition Settlement Agreement Between the Debtors and Dayco

Ronnie David Yona and Caroline Yona (collectively, the "Debtors") commenced a voluntary Chapter 7 petition on June 7, 2016. Prior to the petition date, the Debtors held a 49% interest in Crosspoint Development, LLC ("Crosspoint") through a revocable trust. On October 19, 2017, Crosspoint borrowed money from Dayco Funding Corporation ("Dayco") to develop property located at 1006 W. Avenue H, Lancaster, CA 93536 (the "Lancaster Property"). The Debtors personally guaranteed the loan.

After Crosspoint and the Debtors defaulted on the loan, Dayco initiated foreclosure procedures against the Lancaster Property, and acquired the Lancaster Property at the foreclosure sale. The deficiency balance that remained owing after the foreclosure sale was approximately $3.2 million. To resolve this issue, the Debtors and Dayco entered into a settlement agreement (the "Prepetition Settlement Agreement"), in which Dayco took a security interest in the Debtor's home, located at 11268 Montana Avenue, Los Angeles, CA 90049 (the "Yona

---

[2] The Court considered the following papers in determining this matter:
1) Notice of Removal of Third Party Claim of Dayco Funding Corporation Under 28 U.S.C. Section 1452 and Federal Rules of Bankruptcy Procedure 9027 (Removal of Claims Related to Cases) [Doc. No. 1]
2) Notice of Motion and Motion by Creditor Azriel, LLC to Remand Removed Action and Request for Imposition of Attorneys' Fees in the amount of $5,000 and Sanctions Against Dayco Funding Corporation and its Attorney of Record Andrew K. Alper, Esq. of Frandzel Robins Bloom & Csato, LLC, Jointly and Severally (the "Motion") [Doc. No. 8]
   a) Notice of Motion [Doc. No. 13]
3) Dayco Funding Corporation's Opposition to Motion of Creditor Azriel, LLC to Remand Removed Action and Request for Imposition of Attorneys' Fees in the amount of $5,000 and Sanctions Against Dayco Funding Corporation and its Attorney of Record Andrew K. Alper, Esq. of Frandzel Robins Bloom & Csato, LLC, Jointly and Severally (the "Opposition") [Doc. No. 16]
   a) Declaration of Andrew K. Alper in Support of Opposition [Doc. No. 16]
   b) Notice of Debtors' Joinder in Opposition to Dayco Funding Corp. to Motion of Creditor Azriel, LLC to Remand Removed State Court Action [Doc. No.17]
4) Reply by Creditor Azriel, LLC to Dayco Funding Corporation's Opposition to Motion by Creditor Azriel, LLC to Remand Removed Action and Request for Imposition of Attorneys' Fees in the Amount of $5,000 and Sanctions Against Dayco Funding Corporation and its Attorney of Record and Opposition to Dayco Funding Corporation's Request for Sanctions (the "Reply") [Doc. No. 18]
5) Other relevant pleadings:
   a) Settlement Agreement and General Release (the "Postpetition Settlement Agreement") [Bankruptcy Doc. No. 134, Ex. A]
   b) Order Approving Trustee's Compromise with Debtors and Dayco Funding Corporation (the "Settlement Approval Order") [Bankruptcy Doc. No. 138]

Property"). After the Debtors defaulted on the payments owing under the Prepetition Settlement Agreement, the Debtors and Dayco negotiated a first amended settlement agreement (the "First Amended Prepetition Settlement Agreement"). In connection with the First Amended Prepetition Settlement Agreement, Dayco took a security interest in 100% of the common stock of Caroline Yona, Inc. ("Yona Inc.") and First Merchant Services, Inc. ("First Merchant"), two corporations wholly owned by Caroline Yona. When the Debtors defaulted on the payments owing under the First Amended Prepetition Settlement Agreement, Dayco and the Debtors entered into a second amended settlement agreement (the "Second Amended Prepetition Settlement Agreement"), under which Dayco took a security interest in the commissions, personal property assets, and accounts receivable of Yona Inc. and First Merchant. Pursuant to a pledge and security agreement (the "Pledge Agreement") executed by Caroline Yona and Yona Inc., Dayco was also granted a security interest in (1) certain commissions owed to Caroline Yona and/or Yona Inc. on account of the sale of insurance policies and (2) the inventory, goods and equipment, general intangibles, deposit accounts, chattel paper, commercial tort claims, leasehold improvements, supporting obligations, stock, and books and records of Caroline Yona and Yona Inc. (such security interest, the "Dayco Liens"). Dayco perfected the security interest granted through the Pledge Agreement on June 5, 2015. The Debtors are in default under the Second Amended Prepetition Settlement Agreement.

**B. The Postpetition Settlement Agreement Between the Debtors, Dayco, and the Chapter 7 Trustee**

On March 16, 2017, the Court approved a global settlement agreement between the Debtors, the Chapter 7 Trustee (the "Trustee"), Dayco, Yona Inc., First Merchant, and Crosspoint (the "Postpetition Settlement Agreement"). *See* Order Approving Trustee's Compromise with Debtors and Dayco Funding Corporation (the "Settlement Approval Order") [Bankruptcy Doc. No. 138]. The parties entered into the Postpetition Settlement Agreement after the Court granted Dayco's motion for stay-relief as to the Yona Property over the Trustee's objection. The Trustee had taken the position that he had the ability to avoid Dayco's liens against the Yona Property and that once those liens were avoided, there would be equity in the Yona Property that could be administered for the benefit of creditors. The Postpetition Settlement Agreement provided that the Debtors would pay the estate $102,500 to resolve the disputes related to the Yona Property, as well as various other disputed issues.

The Postpetition Settlement Agreement provides that any disputes concerning its interpretation must be adjudicated by the Bankruptcy Court, if possible:
> Any proceeding intended to interpret this Agreement, to enforce it or seek remedies for an alleged breach of this Agreement must be filed in the Bankruptcy Court. In the event the Bankruptcy Court is unavailable for such proceedings, they must be filed in the United States District Court for the Central District of California.

Postpetition Settlement Agreement at ¶14.

With respect to the Dayco Liens, the Postpetition Settlement Agreement provides:
> To enable the Debtors to make the Settlement Payment in unencumbered, good funds, Dayco (a) waives its right to any distribution or recovery arising out of the [Dayco Liens] or any unsecured liens claim but only from the Estate in the Bankruptcy Case; and (b) will release the Dayco Liens and will otherwise reasonably cooperate, as may be necessary, by executing all documents and pleadings necessary to effectuate the foregoing for the estate. Nothing in this Agreement is intended to be, or may be

>
> interpreted or construed to constitute a release, withdrawal, extinguishment or abandonment of the Dayco Liens as against any collateral or proceeds of collateral in favor of Debtors or any third person or entity, except with respect to the Settlement Payment and assets used to make it, to the extent those assets are or were encumbered by the Dayco Liens….
>
> Notwithstanding the provisions of this Paragraph 8, and notwithstanding any other provision of this Agreement that may imply otherwise, nothing in this Agreement is intended to adversely affect or in any way limit the Dayco Liens or Dayco's rights thereunder, other than to waive its right to a distribution from the estate with respect to any asset other than the Residence; furthermore, neither this Agreement nor anything in it may be interpreted, used or argued to suggest or contend that the Dayco Liens and Dayco's ownership of the Residence as a result of the foreclosure have been adversely affected or limited.

Postpetition Settlement Agreement at ¶¶ 4, 8.

### C. The State Court Litigation

On September 13, 2011, Bank of America commenced a breach of guaranty action in the Los Angeles Superior Court against, among others, Bruce Torkan, Ronnie Yona, Caroline Yona, Yona Inc., and First Merchant (the "State Court Action"). On December 13, 2011, Azriel, LLC purchased Bank of America's interest in the loan upon which the guarantors had defaulted, thereby becoming the real party in interest in the State Court Action. On December 8, 2014, the State Court entered judgment, holding that all the defendants were jointly and severally liable to Azriel in the amount of $1,562,967.56 (the "State Court Judgment"). On May 28, 2015, the State Court awarded Azriel attorneys' fees in the amount of $565,902.08. On May 31, 2016, the State Court found that a portion of the Debtors' retirement accounts were not exempt from the State Court Judgment.

On October 4, 2016, Azriel issued instructions to the Los Angeles County Sheriff's Department to levy on the bank accounts of First Merchant and Yona Inc. On February 7, 2017, the Sheriff's Department informed Azriel that it was holding $20,106.28 resulting from a levy on Yona Inc.'s bank account. Azriel also levied upon insurance carriers with whom Yona Inc. did business, but the Sheriff was unable to recover any funds on account of that levy.

On December 11, 2016, Dayco filed a "Third Party Claim of Security Interest and Lien Priority Over Judgment Creditor Azriel LLC" (the "Third Party Claim"). In the Third Party Claim, Dayco asserted that it was entitled to the funds being held by the Sheriff pursuant to Azriel's levy. Dayco asserted that the Dayco Liens had priority over Azriel's judgment lien.

Azriel filed a "Statement in Opposition to Dayco Funding Corporation's Third Party Claim" (the "Opposition"). In its Opposition, Azriel asserted that the Pledge Agreement through which Dayco acquired the Dayco Liens was a voidable fraudulent transfer. According to Azriel, Yona Inc. provided no consideration for the Dayco Liens, which were granted to Dayco for the exclusive benefit of Caroline Yona. Azriel further argued that as a result of the Postpetition Settlement Agreement, Dayco had waived any right to collect debts owed by Ronnie and Caroline Yona.

On March 24, 2017, Dayco appeared before the State Court and requested that only the Third Party Claim be removed to the Bankruptcy Court, rather than the entire case. Dayco argued that removal of the Third Party Claim was appropriate as a result of Azriel's argument that Dayco's debt collection rights had been extinguished by the Postpetition Settlement Agreement. The State

Court stated that it could not determine which aspects of the case should be removed to the Bankruptcy Court, and advised Dayco to remove the entire case if it believed that the Third Party Claim issues needed to be adjudicated by the Bankruptcy Court. On March 29, 2017, Dayco removed the entire State Court Action to the Bankruptcy Court.

**D. Other Relevant Events in the Bankruptcy Case**

Caroline and Ronnie Yona received a discharge on March 20, 2017. Bankruptcy Doc. No. 140. The Trustee has not yet filed a Final Report. On June 23, 2016, Azriel filed a Proof of Claim in the amount of $2,465,268.35 on account of the State Court Judgment. No parties have objected to Azriel's Proof of Claim.

**E. Azriel's Motion to Remand**

Azriel asserts that equitable considerations require that the action be remanded to the State Court, for the following reasons:

1) The Dayco Liens were created as an accommodation by Yona Inc. on behalf of Caroline and Ronnie Yona. However, no written document exists creating any obligation on the part of Yona Inc. to pay Dayco anything. Therefore, once Caroline and Ronnie Yona's obligations to Dayco were discharged in the bankruptcy, the Dayco Liens secured nothing. Accordingly, Azriel is entitled to enforce its judgment by levying against Yona Inc.'s assets.
2) The State Court Action is based purely on state law and is not a core proceeding. It involves multiple non-debtor parties. Because the Debtors' debts to Dayco have been discharged, Dayco is no longer entitled to recover anything on account of its security interest in Yona Inc.'s assets. The assets in questions belong to Yona Inc., not the Debtors, so there is no issue in the State Court Action that relates to the bankruptcy proceedings.
3) The Postpetition Settlement Agreement also extinguished the Debtors' debts to Dayco, once again eliminating its ability to enforce the Dayco Liens against Yona Inc.

Azriel seeks the imposition of sanctions against Dayco. Azriel asserts that Dayco removed the State Court Action in a bad-faith attempt to obtain a more favorable forum on the issue of whether the Dayco Liens are voidable for lack of consideration. Azriel further seeks the imposition of attorneys' fees and costs, pursuant to 28 U.S.C. §1447(c), which provides that an "order remanding the case may require payment of just costs and any actual expenses."

**F. Dayco's Opposition to Azriel's Motion to Remand**

As justification for removal, Dayco points to Azriel's contention that the Postpetition Settlement Agreement extinguished the Debtors' debts to Dayco, thereby preventing Dayco from enforcing the Dayco Liens against Yona Inc. Dayco emphasizes that the Postpetition Settlement Agreement provides that disputes as to the effect of the agreement are to be determined by the Bankruptcy Court. Dayco further notes that it attempted to remove only the Third Party Claim to the Bankruptcy Court, but that the State Court refused to permit partial removal.

Dayco disputes Azriel's assertion that either the Postpetition Settlement Agreement or the Debtors' discharge eliminated its ability to enforce the Dayco Liens against Yona Inc., for the following reasons:

1) The Debtors' discharge eliminates their personal liability to Dayco but has no effect on the Dayco Liens.

2) The Postpetition Settlement Agreement makes very clear that Dayco released the Dayco Liens only as to the settlement payment, and that the liens were preserved in all other respects.

Dayco argues that Azriel's judgment lien was extinguished by the Postpetition Settlement Agreement. Dayco's theory is as follows:

1) Yona Inc. was property of the estate, because Caroline Yona held 100% of Yona Inc.'s shares.
2) As a representative of the estate charged with liquidating property for the benefit of creditors, the Trustee "stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (internal citations omitted). However, the Trustee "has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Id.* at 1002. The Trustee "has no right to enforce entitlements of a creditor." *Id.* To distinguish between claims of the debtor, which the Trustee has standing to pursue, and claims of creditors, which the Trustee is barred from pursuing, "the focus of the inquiry is on whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct." *Id.*
3) Azriel contends that Yona Inc. fraudulently transferred assets to Dayco by executing the Pledge Agreement. That contention directly and adversely affects estate property (the shares of Yona Inc.). The Trustee has standing to redress injuries to the estate, and accordingly had standing to compromise Azriel's claims against Yona Inc. for the benefit of the estate.
4) The Postpetition Settlement Agreement provides for the release of "all claims, demands and causes of action of any kind, known, unknown or suspected" held by the Trustee. Postpetition Settlement Agreement at ¶11. Although the Trustee did not commence an action to recover the alleged fraudulent transfer from Yona Inc. to Dayco, the Trustee could have commenced such an action. Because the Trustee released the right to pursue a fraudulent transfer action through the Postpetition Settlement Agreement, Azriel is now barred from asserting claims against Yona Inc. based on a fraudulent transfer theory.
5) While Azriel was not a party to the Postpetition Settlement Agreement, it received notice of the motion to approve that agreement and did not object. Accordingly, the Postpetition Settlement Agreement's extinguishment of Azriel's fraudulent transfer claims against Yona Inc. did not violate Azriel's due process rights.
6) Azriel is also precluded from seeking to enforce the State Court Judgment against Yona Inc. or First Merchant as a result of the release provisions contained in the Postpetition Settlement Agreement.

Dayco argues that sanctions should be imposed against Azriel, on the grounds that the Motion to Remand is frivolous because it contains no analysis of the Postpetition Settlement Agreement or the Settlement Approval Order.

The Debtors join Dayco's Opposition to the Motion to Remand. The Debtors take no position regarding the priority dispute between Azriel and Dayco. The Debtors agree with Dayco's position that the lien priority dispute should be adjudicated by the Bankruptcy Court because it requires interpretation of the Postpetition Settlement Agreement.

**G. Azriel's Reply to Dayco's Opposition**
Azriel makes the following arguments in Reply to Dayco's Opposition:
1) Regardless of the outcome of Dayco's Third Party Claim, the bankruptcy estate of the Debtors will receive nothing. The dispute concerns Dayco's ability to enforce the Dayco Liens against Yona Inc., which is not a debtor. Under these circumstances, the Bankruptcy Court should not assert jurisdiction.
2) Dayco's request for sanctions is without merit. If Azriel's motion for remand was so frivolous as to support sanctions, Dayco would not have been required to file a lengthy opposition.

## II. Findings of Fact and Conclusions of Law
**A. To the Extent the Third Party Claim Raises Issues Requiring the Interpretation of the Postpetition Settlement Agreement, the Court Has Ancillary Jurisdiction**

The Settlement Approval Order incorporates by reference the Postpetition Settlement Agreement. The Postpetition Settlement Agreement provides that the Bankruptcy Court has jurisdiction over any proceeding requiring interpretation of that agreement. The Court has ancillary jurisdiction over Dayco's Third Party Claim, because it raises issues requiring the interpretation of the Postpetition Settlement Agreement. *Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 549 (9th Cir. 2006) (explaining that a court has ancillary jurisdiction to vindicate its authority and effectuate its decrees). Specifically, Azriel argues that the Postpetition Settlement extinguished the Dayco Liens. Dayco argues that the Postpetition Settlement Agreement bars Azriel from attacking the validity of the Dayco Liens on a fraudulent transfer theory. Dayco further argues that the Postpetition Settlement Agreement precludes Azriel from enforcing the State Court Judgment against Yona Inc. or First Merchant.

The Court notes that it has jurisdiction over the Third Party Claim only to the extent that it raises issues requiring interpretation of the Postpetition Settlement Agreement. In connection with the Postpetition Settlement Agreement, the Trustee abandoned the estate's interest in Yona Inc. and First Merchant in exchange for a payment of $102,500. Consequently, the lien priority dispute between Azriel and Dayco will have no effect upon the distribution to general unsecured creditors, and will not affect the estate or the bankruptcy case in any other manner. The Third Party Claim is only one small component of the overall State Court Action, and the other aspects of the State Court Action have even less connection to the bankruptcy case than the Third Party Claim. The Court sets forth its findings below with respect to all the issues raised by the Third Party Claim that require interpretation of the Postpetition Settlement Agreement. Having made findings disposing of the only issues over which it has jurisdiction, the Court must remand this action.

**B. The Postpetition Settlement Agreement Did Not Extinguish the Dayco Liens**

Azriel argues that the Postpetition Settlement Agreement eliminated the Debtors' debt to Dayco and that as a result, Dayco cannot enforce the Dayco Liens to collect a debt that dose not exist. There is no merit to Azriel's argument. The Postpetition Settlement Agreement clearly provides that the Dayco Liens remain enforceable:

> To enable the Debtors to make the Settlement Payment in unencumbered, good funds, Dayco (a) waives its right to any distribution or recovery arising out of the [Dayco Liens] or any unsecured liens claim but only from the Estate in the Bankruptcy Case; and (b)

> will release the Dayco Liens and will otherwise reasonably cooperate, as may be necessary, by executing all documents and pleadings necessary to effectuate the foregoing for the estate. *Nothing in this Agreement is intended to be, or may be interpreted or construed to constitute a release, withdrawal, extinguishment or abandonment of the Dayco Liens as against any collateral or proceeds of collateral in favor of Debtors or any third person or entity, except with respect to the Settlement Payment and assets used to make it, to the extent those assets are or were encumbered by the Dayco Liens*….
>
> Notwithstanding the provisions of this Paragraph 8, and notwithstanding any other provision of this Agreement that may imply otherwise, *nothing in this Agreement is intended to adversely affect or in any way limit the Dayco Liens or Dayco's rights thereunder, other than to waive its right to a distribution from the estate with respect to any asset other than the Residence*; furthermore, neither this Agreement nor anything in it may be interpreted, used or argued to suggest or contend that the Dayco Liens and Dayco's ownership of the Residence as a result of the foreclosure have been adversely affected or limited.

Postpetition Settlement Agreement at ¶¶ 4, 8 (emphasis added).

Nor is there any merit to Azriel's argument that the Debtors' discharge prevents Dayco from enforcing the Dayco Liens on the grounds that Dayco cannot enforce a security interest to collect a debt that no longer exists. It is black letter law that that a discharge does not prevent a secured creditor from continuing to enforce its security interest. This is the case even though the discharge extinguishes the debtor's personal liability on the debt. *See, e.g., HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 485 (9th Cir. 2015) ("A creditor with a lien on a debtor's property may generally ignore the bankruptcy proceedings … without imperiling his lien, secure in the *in rem* right that the lien guarantees him under non-bankruptcy law: the right of foreclosure.").

### C. The Postpetition Settlement Agreement Terminated Azriel's Ability to Attack the Validity or Enforceability of the Dayco Liens

As the Ninth Circuit has explained in *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002–03 (9th Cir. 2005):

> A bankruptcy trustee is the representative of the bankrupt estate, and has the capacity to sue and be sued. *See* 11 U.S.C. § 323. Among the trustee's duties is the obligation to "collect and reduce to money the property of the estate." *Id.* § 704(1). The "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," *id.* § 541(a)(1), including the debtor's "causes of action." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (internal quotation marks and citation omitted). Thus, "[u]nder the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991) (citations omitted).
>
> However, "[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Id.* (citation omitted); *see also Steinberg v. Buczynski,* 40 F.3d 890, 893 (7th Cir.1994) ("[T]he trustee is confined to enforcing entitlements of the

> corporation. He has no right to enforce entitlements of a creditor"). This principle derives from the Supreme Court's decision in *Caplin,* "in which the Court concluded that a reorganization trustee under Chapter X had no standing under the old Bankruptcy Act to assert, on behalf of the holders of the debtor's debentures, claims of misconduct against a third party." *Williams,* 859 F.2d at 666; *see also Rochelle v. Marine Midland Grace Trust Co.,* 535 F.2d 523, 527 (9th Cir.1976) (stating that *Caplin* held that "a reorganization trustee has no standing to maintain [an] action on the part of any person or entity other than his debtor corporation"). As we explained in *Williams,* the holding of *Caplin* remains valid under the current version of the Bankruptcy Code, and is equally applicable to both reorganization and liquidation trustees. *See* 859 F.2d at 666–67.
>
>   Although the line between "claims of the debtor," which a trustee has statutory authority to assert, and "claims of creditors," which *Caplin* bars the trustee from pursuing, is not always clear, the focus of the inquiry is on whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct. *See, e.g., Scholes v. Lehmann,* 56 F.3d 750, 753 (7th Cir.1995) (explaining that a bankruptcy trustee may sue only to redress injuries to the debtor in bankruptcy). If the debtor suffered an injury, the trustee has standing to pursue a claim seeking to rectify such injury. But, "[w]hen a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party." *Steinberg,* 40 F.3d at 893.

*Smith*, 421 F.3d at 1002–03.

Debtor Caroline Yona owned 100% of the shares of Yona Inc. Because "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," §541(a)(1), the estate owned 100% of Yona Inc.

The Dayco Liens encumbered the assets of Yona Inc., and Yona Inc. was itself an asset of the estate. Any claims attacking the validity or enforceability of the Dayco Liens belonged to the Trustee, who had standing to pursue such claims as a representative of the estate charged with liquidating assets for the benefit of creditors. The reason is that the Dayco Liens encumbered estate assets, meaning that any action to invalidate those liens would free up additional assets to be administered for the benefit of creditors. By bringing in additional assets to the estate, an action attacking the Dayco Liens would redress injury to the Debtors (the injury being the deprivation of the assets encumbered by the Dayco Liens). Such an action qualifies as a claim of the debtor which the Trustee has statutory authority to assert. In sum, any and all claims attacking the validity and/or enforceability of the Dayco Liens—whether brought under the theory that the Dayco Liens were voidable as a fraudulent transfer, were voidable based on lack of consideration, or were voidable for any other reason—belonged to the Trustee.

Rather than pursuing an action to invalidate the Dayco Liens, the Trustee elected to enter into the Postpetition Settlement Agreement, which yielded a settlement payment of $102,500. The Court approved the Postpetition Settlement Agreement as in the best interests of creditors and the estate. *See* Settlement Approval Order [Bankruptcy Doc. No. 138]. In the Postpetition Settlement Agreement, the Trustee released "all claims, demands and causes of action of any kind, known, unknown or suspected." Postpetition Settlement Agreement at ¶11. That broad release covers any

action attacking the validity of the Dayco Liens, brought under any legal theory, that could have been commenced prior to entry of the Settlement Approval Order.[3]

Azriel received notice of the motion to approve the Postpetition Settlement Agreement and did not object. Azriel has submitted to the Bankruptcy Court's jurisdiction by filing a proof of claim. The Settlement Approval Order is now final and non-appealable. Azriel's ability to assert that the Dayco Liens are voidable and/or unenforceable has been extinguished by the Settlement Approval Order.

**D. The Postpetition Settlement Agreement Does Not Preclude Azriel from Attempting to Enforce the State Court Judgment Against Yona Inc.**

Dayco "seeks … a determination … that the release contained within the [Postpetition Settlement Agreement] included all claims, known or unknown, by Azriel against Yona Inc." Opposition at 21. In support of its request for such a determination, Dayco relies upon the Postpetition Settlement Agreement's release provisions, which state in relevant part:

> 11. [T]he Trustee on the one hand, and each of the Debtors on the other, … hereby releases and forever discharges the other(s) from all claims, demands and causes of action of any kind, known, unknown or suspected, that any of them now owns or holds, or at any time owned or held, or may hereafter own or hold, that arises out of or is connected with the Bankruptcy Case, the Dayco Liens, the Dayco Claim, any Amended Dayco Claim, the Appeal, any right the Trustee has to commence avoidance actions against the Debtors or the Yona Released Parties (defined below), any of the disputes identified above, or any other claims, acts or transactions related to any of those things….
>
> 13. To the same extent described in paragraphs 11 and 12, and subject to all the same conditions, the Trustee additionally releases [Yona Inc. and First Merchant] ….
>
> 16. This agreement precludes the assertion by the Parties or by any creditor of the estate of any further actions, claims or causes of action that are released in this Agreement.

Postpetition Settlement Agreement at ¶¶11–16.

Dayco contends that Azriel is now precluded from seeking to enforce the State Court Judgment against Yona Inc. or First Merchant as a result of the release provisions. Dayco is mistaken.

As discussed above, the Postpetition Settlement Agreement did release all potential claims attacking the validity and/or enforceability of the Dayco Liens. That is because the right to avoid the Dayco Liens was an asset of the estate belonging to the Trustee. Unlike the claims pertaining to the Dayco Liens, Azriel's State Court Judgment against Yona Inc. and First Merchant is not an asset of the estate which the Trustee had authority to settle or compromise. For the State Court Judgment to qualify as an asset of the estate, the Trustee would have to have had the ability to avoid or otherwise attack the State Court Judgment, such that it could no longer exist as

---

[3] The release obviously does not apply to an action attacking the Dayco Liens that did not arise until after the Settlement Approval Order. For example, the Settlement Approval Order does not bar Azriel from challenging the Dayco Third Party Claim on the grounds that it failed to properly describe the personal property in which Dayco claims a security interest or failed to include an appropriate statement of facts. *See generally* Cal. Civ. Proc. Code §720.230 (West 2017) (setting forth the information that must be contained in a third party claim of security interest).

encumbrance against the assets of Yona Inc. and First Merchant. Dayco has not asserted, and there is nothing in the record to suggest, that the Trustee had such an ability.

The Postpetition Settlement Agreement releases only the claims that the Trustee "own[s] or hold[s]." Thus, the release by its terms does not apply to the State Court Judgment, which the Trustee did not own. Finally, Azriel, the party who does own the State Court Judgment, was not a party to the Postpetition Settlement Agreement. Therefore, it would not have been possible for the Postpetition Settlement Agreement to affect Azriel's rights in the State Court Judgment.

### E. The State Court Action is Remanded

Having decided the only issues requiring interpretation of the Postpetition Settlement Agreement, the Court no longer has jurisdiction over the State Court Action. As noted previously, now that the Postpetition Settlement Agreement has been consummated, the estate's interest in Yona Inc. and First Merchant has been abandoned to the Debtors. The settlement funds have been delivered to the Trustee. The outcome of the lien priority dispute does not affect the estate or the amount of funds that can be distributed to general unsecured creditors. The priority issue does not arise under the Bankruptcy Code. For these reasons, the Court has no jurisdiction over the remaining aspects of the priority dispute. Absent jurisdiction, the Court is required to remand the State Court Action. *See* 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the … court lacks subject matter jurisdiction, the case shall be remanded.").

### F. The Requests for Sanctions and Attorneys' Fees Are Denied

Azriel's request that Dayco be required to pay attorneys' fees under 28 U.S.C. §1447(c) and be sanctioned under Bankruptcy Rule 9011 is denied. The Court did have jurisdiction to determine certain of the issues raised by the Third Party Claim. Accordingly, Dayco's removal of the State Court Action was not in bad faith.

Dayco's request that Azriel be sanctioned under Bankruptcy Rule 9011 is denied. Azriel's Motion to Remand was not frivolous given the Court's finding that remand was required upon disposal of the issues over which the Court had jurisdiction.

## III. Conclusion

Based on the foregoing, the Court has ancillary jurisdiction over the Third Party Claim, but only with respect to the issues that require interpretation of the Postpetition Settlement Agreement. As to the issues over which it has jurisdiction, the Court makes the following findings:

1) the Postpetition Settlement Agreement did not invalidate or render unenforceable the Dayco Liens;
2) the Debtor's discharge did not invalidate or render unenforceable the Dayco Liens;
3) as a result of the Postpetition Settlement Agreement, any action attacking the validity and/or enforceability of the Dayco Liens, brought under any legal theory, that could have been commenced prior to entry of the Settlement Approval Order, has been settled and released, and accordingly, Azriel is barred from attacking the validity and/or enforceability of the Dayco Liens under a fraudulent transfer theory, under a theory that the liens were granted without consideration, or under any other legal theory that could have been asserted prior to entry of the Settlement Approval Order; and

    4) the Postpetition Settlement Agreement does not preclude Azriel from attempting to enforce the State Court Judgment against Yona Inc. or First Merchant.

Having disposed of the only issues over which it has jurisdiction, the Court is required to remand the State Court Action. The Court will enter an appropriate order.

###

Date: June 8, 2017

Ernest M. Robles
United States Bankruptcy Judge